IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01246-NRN

KEVIN SMITH,

Plaintiff,

v.

TRANSWEST INC. and
TRANSWEST FREIGHTLINER, LLC OF GRAND JUNCTION d/b/a
TRANSWEST TRUCK TRAILER RV OF GRAND JUNCTION,

Defendants.

---

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 42)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

      This employment discrimination case is before the Court for all purposes on the consent of the parties, ECF No. 17, and an Order of Reference entered by Chief Judge Philip A. Brimmer on August 3, 2023, ECF No. 18. Now before the Court is Defendants Transwest Inc. and Transwest Freightliner, LLC of Grand Junction d/b/a Transwest Truck Trailer RV of Grand Junction's (collectively, "Defendants" or "Transwest") Motion for Summary Judgment. ECF No. 42. Plaintiff Kevin Smith filed a response, ECF No. 48, and Transwest filed a reply, ECF No. 54. The Court heard argument on the subject motion, ECF No. 60, and has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **ORDERED** that that the subject motion, ECF No. 42, be **DENIED**.

I.   PROCEDURAL HISTORY

Mr. Smith initiated this lawsuit against his former employer, Transwest, on May 18, 2023. ECF No. 1. He brings discrimination and failure to accommodate claims under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, et seq., alleging that Transwest failed to make reasonable accommodations for his disability (physical impairments due to a car accident and multiple surgeries) and subsequently terminated his employment even though he could perform the basic requirements of his job and was qualified to perform other open positions.

After the completion of discovery, the subject motion was filed on May 29, 2024. ECF No. 42. Transwest seeks summary judgment in its favor under Federal Rule of Civil Procedure 56 because it contends that it needed not retain Mr. Smith as an employee because no reasonable accommodation could be made for him, given his physical restrictions and the various job requirements.

II.   FACTUAL BACKGROUND

   a.  Smith's Employment as RV Technician, Accident, and Surgeries

Transwest hired Smith in February 2015 as an RV Technician ("RV Tech") at Transwest's Grand Junction, Colorado location. *See* ECF Nos. 42-1, 42-2. The actual physical requirements of the RV Tech position, and in particular the weightlifting requirement, are heavily contested by the parties. According to Transwest's RV Tech job description, the responsibilities of the job included (among other things) examining RVs in need of repair; repairing and installing certain RV components; and repairing generator systems, roof mounted air conditioning units, propane systems, water systems, and plumbing. ECF No. 42-3. In terms of physical abilities, the RV Tech job

2

description states: "requires frequent sitting, standing, balancing, bending or stooping for prolonged periods of time," and "[m]anual dexterity, fine manipulation and the ability to reach with hands and arms and lift up to 80 lbs." *Id.* Transwest implements a physical evaluation, including a lifting requirement, to determine whether an applicant can be hired as an RV Tech. In Smith's February 10, 2015 Pre-Employment Lifting Evaluation, it was determined safe for Smith to lift 50 pounds from floor to waist—the pre-employment lifting requirement for an RV Tech. ECF No. 48-2. The parties agree that this weightlifting requirement has not changed since 2015. ECF No. 48-6 ¶ 15.

That said, a Transwest vocational expert in a separate lawsuit performed a job demands analysis for the RV Tech position in January 2021, and found that an RV Tech only lifts 10 pounds or more 10 time in a 6-hour period, and never lifts 80 pounds or more, and that walking, carrying, stooping, twisting, balancing, squatting, and climbing were rare in the position. ECF No. 48-13 at 2–3, 8.

On March 6, 2018, Smith was injured in a car accident unrelated to his employment. ECF No. 42-4 at 53:1-7. On December 10, 2019, Smith saw Dr. Corenman about his worsening back pain, which had begun with the car accident. ECF No. 42-8 at 1; ECF No. 42-2 at 67:1-13. Smith had degenerative scoliosis in his spine with angular collapse. ECF No. 42-8 at 3. After receiving a spinal epidural in January 2020 which did not provide significant pain relief, Smith and Dr. Corenman discussed possible surgical interventions on February 4, 2020. ECF No. 42-4 at 69:9-13. Dr. Corenman recommended that Smith undergo "a T12-S1 posterior fusion with a TLIF at LS-S1 as well as bilateral iliac screws," and advised Smith that "[h]e would have to enforce some lifestyle changes postoperatively" and "[h]e would no longer be able to

work at a physical job where he has to do a lot or bending, twisting, lifting, and carrying." ECF No. 42-9 at 1.

Smith testified that, shortly after his February 4, 2020 conversation with Dr. Corenman, he informed supervisor Ken Hurst of his upcoming surgery and "told [Hurst] that [he] was concerned about being able to physical work when [he] came back out." ECF No. 42-4 at 75:23-76:21. Hurst was the service manager at Transwest's Frederick, Colorado location, and oversaw four Transwest locations, including Grand Junction, which included Jeremy Heier (Smith's direct supervisor) and Smith. ECF No. 48-7 at 35:5-8, 40:24-41:4. Smith testified that Hurst responded, "don't worry about it. With your knowledge and experience, we will find you something to do." *Id.* at 76:22-24. Smith testifies that he again spoke with Hurst after the first surgery, and Hurst gave similar assurances. ECF No. 48-1 at 78:7-21.

Smith also spoke to his supervisor Jeremy Heier following his conversation with Dr. Corenman. Smith told Heier that he needed to have surgery, but did not say that he would be unable to perform the functions of an RV Tech after surgery, and did not discuss any reassignment to a different position. ECF No. 42-4 at 78:25-80:2.

On approximately February 7, 2020, Smith notified the Transwest Human Resources department that he might need to take FMLA leave following his surgery, and Caitlin Cereceres (Transwest HR Business Partner) provided him with FMLA enrollment documents. ECF No. 42-10.

On March 4, 2020, Smith underwent a spinal fusion surgery with the insertion of iliac screws, performed by Dr. Corenman. ECF No. 42-11 at 1. A March 18, 2020 note from Dr. Corenman states that "patient may NOT return to work until re-evaluated on

4

July 1st. If returned to work at that time, it would be sedentary duties only." ECF No. 42-12. Smith gave the note to Transwest, was provided twelve weeks of FMLA leave (from March 4, 2020 through June 2, 2020), and initially expected to return to work on June 3, 2020. ECF Nos. 42-4 at 83:16-17, 93:11-21; 42-13; 42-14. However, Smith experienced additional severe back pain approximately six weeks post-surgery. ECF No. 42-4 at 84:25-85:4.

On May 4, 2020, Smith informed Cereceres that he would need a second surgery, which took place two days later. ECF Nos. 42-17, 42-4 at 96:4-9. In a May 19, 2020 email, Smith again provided Cereceres with the March 18, 2020 doctor's note, and expressed hope that he would be cleared for light duty on July 1 and that Transwest would "extend my FMLA so I have a job when healed." ECF No. 42-19. On June 18, 2020, Transwest approved Smith for additional unpaid leave through July 2, 2020. ECF No. 42-20.

On July 6, 2020, Smith texted Heier a picture of an undated note from Dr. Corenman, which stated that "Mr. Smith may now return to light-duty work. Restrictions include no bending, twisting, or lifting greater than 10 pounds. In one month he may lift up to 20 pounds occasionally." ECF No. 42-21. Smith also provided the note to Heier in person. ECF No. 42-4 at 101:17-20. Smith testified that Heier told him that he could work as a technician with his light duty work release. ECF No. 48-1 at 80:2-10.

In his deposition, Smith testified that, as of July 2020, he was disabled because he could only pick up 10 pounds, he was physically unable to work as an RV Tech, and "there was no accommodation Transwest could have made for [him] that would have allowed [him] to be an RV Tech[]." *Id.* at 103:11-23; 106:3-12.

5

### b.  Discussion of Alternative Job Positions and Termination

In early June 2020, Transwest Grand Junction posted job openings for a warranty clerk/admin position and a service writer position. ECF No. 48-11. At Transwest's Grand Junction location, the positions of warranty clerk and service writer are the same. ECF No. 42-5 at 22:18-24. The physical requirements of these jobs are also contested. According to the service writer job description, the responsibilities of the job included (among other things) communicating with customers about work being performed on their vehicle. ECF No. 42-23 at 1. In terms of physical abilities, the service writer job description is nearly identical to the RV Tech job description. *Compare id.*, *with* ECF No. 42-3. However, the warranty clerk job posted in June 2020 does not contain any lifting requirement. ECF No. 48-12. Hurst testified that service writers may have to move 20 to 25 pounds at times, and this position would be the "least physical" one at the shop. ECF No. 42-7 at 57:9-15. When asked the heaviest thing he has had to lift in his role as a service writer, Heier testified: "I've helped with air conditioners and jacks. Anything that's heavy, I'll help with them because techs will all be busy at times, and I was able to do it, so I just volunteered to help." ECF No. 42-5 at 10:11-18. He would not lift these items by himself, and it was not a requirement of the service writer job to lift a full air-conditioning unit, although "guys do it." *Id.* at 10:19-24. Hurst testified that he has observed a current service writer at Transwest Grand Junction help lift a battery, which can weigh up to 100 pounds. *Id.* at 24:9-16. Thompson testified that he thought a service writer would probably have to lift up to 50 pounds, but that he could not recall the exact requirement, and that the RV Tech position was more physically demanding than service writer. ECF No. 42-6 at 26:15-27:21.

Smith's affidavit provides that on July 9, 2020, he asked Heier "to be reassigned to another vacant position at Transwest . . . specifically the available positions of warranty clerk, RV service writer, or parts help, which I knew were open and that I was qualified and able to do even with my medical restrictions at the time." ECF No. 48-4 ¶ 15. Smith's affidavit states that Heier did not inform Smith of any lifting requirements for these positions at that time. *Id.* ¶ 16.

Supposedly based on the requirement that a service writer would have to lift 50 pounds, and Smith's physical restrictions from his doctor suggesting that he would not meet the qualifications for the service writer, parts assistant, or warranty clerk positions, Transwest terminated Smith's employment on July 13, 2020. ECF No. 42-22.

### c. Post-Termination

Dr. Corenman testified in another lawsuit that as of August 13, 2020, Smith could not lift more than 10 pounds; could not bend, twist, or lift in general; and could not do impact activities. ECF No. 42-24 at 55:24-56:8. Dr. Corenman also testified that he did not think Smith could return to the RV Tech job because he would have long-term maximum lifting restrictions of 20 to 25 pounds. *Id.* at 56:12-57:22.

In January 28, 2021 discovery responses that Smith submitted in connection with a subsequent worker's compensation case against Transwest, Smith stated that although he was actively applying for jobs, "[d]ue to the physical limitations and restrictions Dr. Corenman put on me in regard to the surgeries I had, I have not been able to find any full or part time employment in regard to my background, training and experience." ECF No. 42-25 at 11.

Smith testified at his deposition that he could not work at any job from March 2, 2020 to January 28, 2021 because he was totally disabled during that time period. ECR No. 42-4 at 141:12-142:9.

On April 16, 2022, Smith applied for social security disability insurance ("SSDI") benefits. ECF No. 42-26. On the application, in response to the question "Explain what you lifted, how far you carried it, and how often you did this," Smith wrote (regarding his prior position as an RV Tech at Transwest Grand Junction from 2015 to 2020): "Rooftop AC – 146 lbs – up ladders to remove and replace faulty units on roof – 10-30 ft – every other week. Appliances – refrigerators, microwaves, stoves, washers & dryers, carry through units and out through windows – weight 125-250 pounds 10-40 feet on a weekly basis." *Id.* at 2. He indicated that his "heaviest weight lifted" was 100 pounds or more, and his weight "frequently lifted" was 50 pounds or more. *Id.* He indicated that he would kneel, walk, stand, stoop, crouch, and crawl for at least 30 minutes each day. *Id.* Smith's social security application was approved and he began receiving payments on September 21, 2022. ECF No. 42-27.

Smith testified at his deposition that as of January 18, 2024, no doctor has told him that he was healed enough to return to his RV Tech job, and that his condition has worsened since January 28, 2021 because the rods in his back have broken. ECF No. 42-4 at 112:5-8, 144:1-12. He further testified that he could not currently perform the job of RV Tech, as one wrong move "could paralyze or kill" him, and that he has not worked since Transwest terminated his employment. *Id.* at 150:12-19, 13:4-9.

Transwest moves for summary judgment arguing that there is no genuine issue of fact for trial. Transwest argues that, especially given Mr. Smith's admissions in

8

deposition, Smith could not work as an RV Tech (or any other position) at the time he was terminated and therefore cannot even establish a case either for failure to accommodate or discrimination under the ADA.

## III. LEGAL STANDARDS

### a. Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Unsupported and/or conclusory allegations do not establish an issue of fact sufficient to defeat summary judgment. *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *see also McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

"The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52 (1986).

### b. ADA Claim for Failure to Accommodate

To establish a prima facie failure-to-accommodate claim, an employee must show (1) he was disabled, (2) he was otherwise qualified, (3) he requested a plausibly

reasonable accommodation, and (4) the employer refused to accommodate his disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). If the employee makes the requisite showing, the burden "shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Lincoln v. BMSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (internal quotations omitted). If the employer presents such evidence, "summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (internal punctuation and citation omitted).

### c. ADA Claim for Discrimination

The ADA provides that no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a prima facie case for discrimination under the ADA, Smith must show that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir.

2017). To determine if someone is a "qualified individual," courts ask, "whether the plaintiff can perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue," and if not, the Court then "must determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (internal citations and quotation marks omitted).

## IV. ANALYSIS

Smith brings two ADA claims against Transwest: for discrimination and failure to accommodate. Transwest moves for summary judgment on the failure to accommodate claim, and argues in its reply brief that Smith's discrimination claim is "intertwined" with the failure to accommodate claim and therefore Transwest is also entitled to summary judgment on this claim. Lastly, Transwest argues that Smith is not entitled to wage loss damages because it is undisputed that he was completely disabled when he was terminated, his condition worsened, and he later received SSDI benefits. The Court will address each argument in turn.

### a. Failure to Accommodate

The parties do not dispute that Smith is disabled and that he is otherwise qualified to perform the job of RV Tech. ECF No. 42 at 14. Transwest instead argues that the extent of Smith's disability means that he has failed to establish that he requested a "plausibly reasonable accommodation." *Id.* at 15.

"Reasonable accommodations" are ones which "presently, or in the near future, enable the employee to perform the essential functions of his job." *Lincoln*, 900 F.3d at 1205 (internal quotation marks and citation omitted). Whether a requested

accommodation is reasonable is a mixed question of law and fact. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004). The ADA provides that a reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). However, "an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason*, 357 F.3d at 1122. An employee must "establish that there was, in fact, a reasonable accommodation that would have enabled [him] to perform the essential functions of [his], or another job to which the [employer] could have re-assigned [him]." *Aubrey*, 975 F.3d at 1009–10.

Further, after an employee requests an accommodation, an employer "ha[s] a duty to work with [the employee] to identify the type of position that would reasonably accommodate [his] limitations." *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004). This so-called "interactive process" is necessary "to determine [an employee's] limitations and consider whether the accommodations [he] requested, or perhaps others that might come to light during this interactive process, would enable [him] to return to work." *Aubrey*, 975 F.3d at 1007. "The obligation to participate in this interactive process is inherent in the statutory requirement that the employer offer a disabled, but otherwise qualified employee a reasonable accommodation." *Id.* (citation omitted). "The interactive process requires the good faith participation of *both* the employer and employee." *Id.*

Transwest argues that there is no genuine dispute that no accommodation was possible for Smith, including reassignment, and therefore it is entitled to summary judgment on Smith's failure to accommodate claim. In support, Transwest points to Smith's testimony that in July 2020, "there was no accommodation Transwest could have made for [him] that would have allowed [him] to be an RV Tech[]," and that he could not work at any job from March 2, 2020 to January 28, 2021 because he was totally disabled during that time period. ECR No. 42-4 at 103:11-23; 106:3-12, 141:12-142:9. Regarding a potential reassignment, Smith points to evidence that reasonable accommodation may have been possible, either within the RV Tech position or the warranty clerk/service writer positions. There is disputed testimony that Smith spoke to Hurst, his boss's boss, pre-surgery and was assured that Transwest would find a job for him, even with physical limitations. ECF No. 42-2 at 76:22-24. In early July, Smith told Heier that he was cleared for light duty. ECF No. 42-21. A few days later, Smith offered to take a 50 pound lift test in order to return to work. ECF No. 48-8 at 1. As to the warranty clerk/service writer positions, the job posting for warranty clerk in June 2020 did not contain a weight lifting requirement. ECF No. 48-12. Hurst testified that a service writer would only need to lift a maximum of 20 to 25 pounds—the same amount that Dr. Corenman predicted as Smith's long-term lifting restriction. ECF No. 42-7 at 57:9-15. Testimony from multiple sources has also indicated that Transwest employees frequently use mechanical aids and/or work in teams in order to lift heavy objects. Given all of this, and viewed in the light most favorable to Smith, there are disputed issues of fact here, and Transwest is not entitled to summary judgment on this claim.

Smith additionally has presented evidence that calls into question whether Transwest adequately participated in the interactive process. Smith presented the doctor's note indicating he was released for light duty work on July 6, 2020. There is evidence that on July 9, 2020,[1] Smith asked Heier "to be reassigned to another vacant position at Transwest . . . specifically the available positions of warranty clerk, RV service writer, or parts help, which I knew were open and that I was qualified and able to do even with my medical restrictions at the time." ECF No. 48-4 ¶ 15. Smith says that Heier did not inform him of any lifting requirements for these positions, and called Cereceres to see if any of the positions would work for Smith. *Id.* ¶ 16. Cereceres stated that she would need to speak with Hurst and Thompson, and then would discuss the matter with Heier the next day, *Id.* ¶ 17, but Hurst and Thompson both testified that he did not recall ever speaking with Cereceres about Smith's employment or termination. ECF No. 48-5 at 29:10-30:2. This could indicate that the interactive process was not fully pursued in good faith by Transwest. "[A]n employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment." *Aubrey*, 975 F.3d at 1010.

---

[1] Transwest disputes that this July 9, 2020 conversation occurred, and argues that because it is only supported by Smith's affidavit, it does not create a genuine issue of material fact and should be disregarded. ECF No. 54 at 4. "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). However, in this case, Transwest does not point to any evidence that directly contradicts the assertion that the July 9, 2020 meeting occurred. Further, the July 13, 2020 email exchange between Smith and Cereceres appears to support the idea that the July 9, 2020 conversation occurred, as Cereceres alludes to the fact that she has not yet spoken with Heier.

15

Given this evidence, there exist genuine disputes of material fact relating to Smith's failure to accommodate claim.

Transwest additionally argues that because Smith swears in his SSDI application that he was unable to work and experienced severe pain as of April 16, 2022, and because Smith does not explain the inconsistency between these statements and his representation in this lawsuit that he is now physically able to work, that Smith is unable to prevail on his failure to accommodate claim.

Transwest points to *Cleveland v. Policy Management Systems Corp.*, which provides that "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." 526 U.S. at 807. However, in *Aubrey v. Koppes*, the Tenth Circuit held that whether statements in an SSDI application undercut a plaintiff's ADA claim is a question for a jury to decide. *Aubrey*, 975 F.3d at 1013. Both *Cleveland* and *Aubrey* recognize that the meaning of "disabled" in the ADA and SSDI context are not the same, and an SSDI application is not necessarily inconsistent with an ADA claim. *Cleveland*, 526 U.S. at 803 ("[A]n ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it."); *Aubrey*, 975 F.3d at 1013.

    b.  Discrimination

Transwest's Motion for Summary Judgment erroneously asserts that Smith has brought only a "single claim for failure to accommodate" under the ADA. The subject motion does not state that it moves for summary judgment on Smith's ADA

discrimination claim. It does not discuss the elements of such a claim, nor whether there is a genuine dispute of material fact as to these elements. Plaintiff argues in response that Transwest has therefore failed to move for summary judgment as to the discrimination claim. In reply, Transwest presents new argument that because it is entitled to summary judgment on the failure to accommodate claim, and the two claims are "intertwined," it is entitled to summary judgment on the discrimination claim.

The Court is unable to accept Transwest's new and late attempt to argue for dismissal of an additional claim on reply. However, even if the Court were to consider Transwest's arguments made in reply, it would deny Transwest's motion for summary judgment on the discrimination claim.

Transwest argues that Smith was not a qualified individual because he could not perform the essential functions of the RV Tech job. But, as discussed above, these essential functions are disputed. A 2021 job demands analysis showed that RV Techs only occasionally (10-33% of the time) lifted 1-70 pounds. ECF No. 48-13 at 2. Smith testified that Heier told him he could perform the RV Tech job when he was released to light duty. ECF No. 48-1 at 80:2-10. Testimony from multiple sources indicates that Transwest employees used mechanical assistance and worked in teams to lift objects. The Court therefore concludes that there is a genuine dispute of material fact as to essential functions of this job, such that Transwest would not be entitled to summary judgment on Smith's ADA discrimination claim. In addition, there is evidence that Smith was qualified to do other jobs that did not have a lifting requirement (such as service writer) and Transwest did not consider him for that position as a reasonable accommodation.

### c. Limitations on Damages

Transwest lastly argues that Smith is not entitled to damages because there is no genuine dispute that (a) Smith could not perform any job at Transwest at the time of his termination, (b) his condition has worsened since that time, (c) he has been receiving SSDI payments since April 16, 2022, and (d) Smith's doctor, Dr. Ahrens, testified that Smith would not be entitled to future wage losses from Transwest from January 28, 2021 onward, based upon Smith's testimony that he could not work in any capacity from March 2020 through January 28, 2021. ECF No. 42 at 20-21. In response, Smith argues that his ability to work after being terminated by Transwest is irrelevant to whether Transwest's actions injured him. ECF No. 48 at 23.

In response, Transwest alternatively argues that Smith's damages should not extend beyond April 16, 2022 (the date he began receiving SSDI) because he has not presented any evidence that he was able to work at or beyond that date. ECF No. 54 at 11–12. However, as discussed above, the meaning of "disabled" in the ADA context versus the SSDI context are not the same. The Court declines to impose a time limit on Smith's potential damages at this time.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 42, is **DENIED.**

Date: September 9, 2024

*N. Reid Neureiter*
_____
N. Reid Neureiter
United States Magistrate Judge

18