IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01246-NRN

KEVIN SMITH,

Plaintiff,

v.

TRANSWEST INC. and
TRANSWEST FREIGHTLINER, LLC OF GRAND JUNCTION d/b/a
TRANSWEST TRUCK TRAILER RV OF GRAND JUNCTION,

Defendants.

**ORDER ON MOTIONS IN LIMINE (ECF Nos. 56, 57, 58, and 59)**

This is an Americans with Disabilities Act ("ADA") case in which Plaintiff Kevin Smith alleges that he had a disability (an injury to his back) that required him to have an accommodation to work as an RV technician for Defendants Transwest, Inc. and Transwest Freightliner, LLC of Grand Junction d/b/a Transwest Truck Trailer RV of Grand Junction (together, "Defendants" or "Transwest"). Transwest says it fired Mr. Smith because, with his injury, he could not perform the essential functions of his job or other jobs that may have been available at Transwest.

This matter comes before the Court on various motion in limine filed by the parties. *See* ECF Nos. 56 (Plaintiff's Motion in Limine to Exclude Evidence of Social Security Disability Insurance), 57 (Plaintiff's Motion in Limine to Exclude Evidence of Personal Injury Lawsuit and Workers' Compensation Proceedings), 58 (Defendants' Motion in Limine Regarding Statements About Hiring Kevin Smith), and 59 (Defendants' Motion in Limine Regarding Limitation on Plaintiff's Damages).

The parties each responded to the respective motions, *see* ECF Nos. 63, 64, 65, 66, and the Court heard argument on the motions during the final pretrial conference on September 3, 2024. *See* ECF No. 68. With respect to these motions, the Court rules as follows.

I. **Plaintiff's Motion in Limine to Exclude Evidence of Social Security Disability Insurance, ECF No. 56**

After Mr. Smith was fired from his job, and after he suffered another injury, he applied for Social Security disability insurance benefits ("SSDI"), which he was ultimately awarded. Plaintiff seeks to exclude all evidence of Mr. Smith's SSDI application and evidence of his receipt of such benefits.

The timing is as follows: Mr. Smith was terminated from this job as an RV technician by Defendants on July 13, 2020, after he had undergone a back surgery and was released by his doctor for light duty work.

Subsequently, he attempted but failed to obtain alternative employment, and suffered a subsequent injury to his neck.

Then on April 11, 2022, Mr. Smith applied for SSDI, which he was ultimately awarded. Mr. Smith began receiving SSDI benefits in September 2022 and continues to receive them through the present day.

Mr. Smith argues that evidence of his subsequent SSDI application and receipt of SSDI benefits is inadmissible under Fed. R. Evid. 401, 402, and 403 and Colo. Rev. Stat. § 13-21-111.6. Mr. Smith bases his argument principally on relevance—something he did a year and half after Transwest terminated his employment has no relevance to his physical condition, his ability to work, or why Transwest decided to terminate him in July 2020. Per Mr. Smith, his SSDI application only reflects his physical abilities as of

2

April 11, 2022, which changed months after his termination when the rods in his neck broke. Mr. Smith argues that the statements he made about himself in his SSDI application do not accurately reflect his condition at or near the date of his termination. In addition, the SSDI payments that he is receiving constitute collateral source income that should not be considered by the jury.

Defendants, for their part, argue that the SSDI application is both relevant and admissible. Per Defendants, "Plaintiff cannot, on the one hand, assert that he is physically able to perform the essential functions of employment at Transwest, and simultaneously assert that he is physically unable to work to the extent where he must receive SSDI benefits." ECF No. 65 at 1–2.

Defendants concede that Plaintiff submitted his SSDI application in April of 2022, whereas he had been let go by Transwest in July of 2020. Despite the incongruity of the timing, Defendants say that the SSDI application contains numerous admissions, for example about the physical demands of the RV technician position, that are inconsistent with the position taken in this litigation, that he could perform those tasks. Also, Defendants point out that in the application, Plaintiff makes reference to the surgeries he had prior to his termination of employment as one of the reasons he is disabled—not simply the complications that occurred after his termination. Defendants argue that Plaintiff "cannot have it both ways"—he cannot claim he could work and could have returned to work at Transwest while simultaneously claiming that he is totally disabled and therefore entitled to receive disability benefits.

Defendants zero in on three areas of relevance of the SSDI material: the physical functions of the RV technician position; the Plaintiff's physical condition, and his

damages (claimed front and back pay). Ultimately, Plaintiff must prove that he was able (with an accommodation) to perform the essential functions of the job or jobs available at Transwest. Per Defendants, in the SSDI application, Plaintiff makes sworn statements that the physical demands of the RV technician job far exceed the work restrictions placed on him by his doctor before Transwest terminated his employment. Defendants also argue that although Mr. Smith applied for SSDI after his termination and after the rods in his neck broke, the SSDI application references the surgery and the doctor's work restrictions as part of the basis for his disability claims, which predated his termination from Transwest.

To makes its decision, the Court turns for guidance to the Supreme Court's decision in *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795 (1999). There, the Court held that the pursuit, and receipt, of SSDI benefits does not automatically estop a recipient from pursuing an ADA claim, nor does it erect a strong presumption against the recipient's ADA success. However, an ADA plaintiff cannot ignore her SSDI contention that she was too disabled to work, but must explain why that contention is consistent with her ADA claim that she can perform the essential functions of her job, at least with reasonable accommodation.

As the Supreme Court explained, there are "many situations in which an SSDI claim and an ADA claim can exist side by side." *Id*. at 802–03. The reason for this is that the standard for disability is different under the two regimes. Under the ADA, a "qualified individual" includes a disabled person who can perform the essential functions of her job "with reasonable accommodation." *Id*. at 803. While the Social Security Act ("SSA") determines whether a person is disabled for SSDI purposes without taking the

4

possibility of "reasonable accommodation" into account, and an applicant need not "refer to the possibility of reasonable accommodation when she applies for SSDI." *Id*. "The result is that an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it." *Id*. The Supreme Court also seems to have foreshadowed the circumstances of this case, noting that "the nature of an individual's disability may change over time, so that a statement about that disability at the time of an individual's application for SSDI benefits may not reflect an individual's capacities at the time of the relevant employment decision." *Id.* at 805.

The bottom line is that based on the *Cleveland* case, I find that Plaintiff's application for SSDI benefits and the admissions made in that application are relevant to the issues in this case and are admissible. Plaintiff will need to explain the various admissions he made in his 2022 SSDI application about the work requirements of an RV technician and the source (or cause) and timing of his disability. The Defendants will be entitled to use Plaintiff admissions in the SSDI application in this case, and to that extent, this motion in limine (ECF No. 56) is **DENIED in part**.

However, I do not find that Plaintiff's receipt of SSDI benefits is admissible. As explained by the Supreme Court, the determination of disability under the SSA is different from the whether a plaintiff could have worked with an appropriate accommodation. So, whether the Social Security Administration found the Plaintiff disabled for SSDI purposes is irrelevant to what the jury will be assessing in this case— whether he could perform the essential functions of the job with a reasonable accommodation. Thus, with respect to the ultimate determination that the Plaintiff was

5

and is disabled for Social Security purposes and is receiving SSDI, I find that to be not relevant to the issues, and potentially very confusing to the jury. To the extent that the receipt of benefits is related to front pay or back pay damages (or any offset thereof), as the Parties have explained, these are equitable remedies to be awarded by the Court. If necessary, the Court will hear evidence on those damages issues outside the presence of the jury. Therefore, Plaintiff's motion in limine seeking to exclude evidence that Plaintiff has been deemed disabled for the purpose of receiving SSDI and is receiving those benefits, this motion in limine (ECF No. 56) is **GRANTED in part**.

Further, the Court will consider a giving the jury a limiting instruction explaining that the because the standards for disability are different under the ADA and the SSA, it is not relevant to their task whether Plaintiff qualified as disabled for purposes of Social Security.

## II. Plaintiff's Motion in Limine to Exclude Evidence of Personal Injury Lawsuit and Workers' Compensation Proceedings, ECF No. 57

While he was employed at Transwest, on March 6, 2018, Mr. Smith sustained a whiplash injury to this neck from a motor vehicle accident. He filed suit against the other driver on April 29, 2019 in Mesa County District Court. The case was settled and dismissed in November 2021. Plaintiff asks the Court exclude all evidence of Mr. Smith's personal injury lawsuit pursuant to Fed. R. Evid. 201, 401, 402, and 403.

Plaintiff argues that the motor vehicle accident occurred two years before his termination from Transwest, and that his negligence and loss of consortium claims in the personal injury case (filed a year before he filed this case) have no relevance to the issues in this case (which focus on why Plaintiff was terminated from his job, not the vehicle accident). In addition, Plaintiff argues that any mention of his settlement or the

6

money recovered from that accident would confuse the jury in this case, leading the jury to wrongfully conclude that he is seeking to recover additional damages for injuries he has already been compensated.

Plaintiff also seeks to exclude any evidence of worker's compensation proceedings initiated against Transwest in connection with that motor vehicle accident. In this regard, Mr. Smith had filed his application for workers' compensation benefits on January 5, 2021, in Colorado Workers' Compensation Case No. 5-149-065, claiming his back injuries were work related. The case was subsequently settled. Plaintiff anticipates that Transwest will attempt to admit this evidence of Plaintiff's workers' compensation proceedings and ask he and his experts about it on cross-examination. Here again, Plaintiff is fearful that the jury will be confused by these various legal filings, and that the worker's compensation records are not relevant to the ADA claims being brought here. Plaintiff cites *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1296 (10th Cir. 1998), for the proposition (similar to the one seen in *Cleveland*) that a worker cannot be estopped from pursuing an ADA claim merely because he applied for and received permanent and total disability benefits under a state workers' compensation statute, as those workers' compensation benefits are awarded without regard to reasonable accommodation. But critically, *Aldrich* did not say that evidence of workers' compensation proceedings or statements made in those proceedings are inadmissible, merely that the two claims (an ADA claim asserting the plaintiff could work with an accommodation and a workers' compensation claim asserting a full disability) are not mutually incompatible. Indeed, *Aldrich* notes that testimony or statements by an ADA

7

plaintiff may "constitute evidence relevant to a determination of whether the plaintiff is a 'qualified person with a disability' . . .but it is not dispositive." *Id.* at 1269.

Transwest characterizes this motion in limine as "an overbroad, all-encompassing request to bar any and all evidence from two other cases he filed." ECF No. 63 at 1. Transwest asserts that these two other cases contain numerous relevant statements regarding the cause of Plaintiff's injuries, his disability, and the disability preventing him from working at Transwest. In Transwest's view, this evidence is all "critical to Transwest's defense that Plaintiff is disabled and was unable to perform the essential functions of employment with or without a reasonable accommodation."

Similar to the ruling on the Social Security claim above, I find that the records of these proceedings do include relevant information (including statements made by Plaintiff) about the extent of Plaintiff's injuries and the degree of his disability and ability to work. Therefore, I **DENY in part** Plaintiff's motion in limine (ECF No. 57) which seeks to preclude any reference to or evidence from the personal injury and workers' compensation proceedings. That said, I believe that evidence of the *outcomes* of these proceedings are irrelevant to the issues before the jury in this ADA case. A workers' compensation claim is not necessarily inconsistent with an ADA claim and the fact that a person has received workers' compensation benefits does not mean he was not discriminated against because of his disability. Similarly, a personal injury claim, and a disability that may have resulted from said injury, is not inconsistent with an ADA claim for a failure to accommodate that disability. Therefore, the Court will **GRANT in part** Plaintiff's motion to the limited extent that evidence about the *outcomes* of these proceedings or any payments to Plaintiff as a result of these proceedings will be

excluded on the grounds of lack of relevance, potential confusion of the jury and the potential for unfair prejudice to Plaintiff.

### III. Defendants' Motion in Limine Regarding Statements About Hiring Kevin Smith, ECF No. 58

Transwest seeks to exclude as hearsay Plaintiff's deposition testimony recounting statements made by potential employers to Plaintiff about why they did not hire him after he had been terminated by Transwest. In his deposition, Mr. Smith testified about applying for other jobs after leaving Transwest. Specifically, he testified that he applied for "[s]ervice technicians, boat mechanics, car mechanics. I was all – I was turned down on all of them because workers' comp would not take me." ECF No. 58-1, Smith Depo. Tr. at 146:5–8. Although he did not complete a paper application, he applied to several facilities in Grand Junction in person. *Id*. at 146:17–147:1. Mr. Smith testified that he "disclosed [his] back [condition]" to each prospective employer, and he was told "their insurances would not cover me. Too high of a risk with previous injury." *Id*. at 147:1–7. He stated that because these companies' insurance would not cover him, they could not hire him. *Id*. at 147:18–22; *see also* 148:6–23 (discussing specific application and rejection).

Transwest asserts that Mr. Smith's testimony about his job applications and reasons for rejection is hearsay, and its admittance would violate Fed. R. Evid. 801 and 802, as the testimony is an out of court statement by a declarant submitted for its truth. Transwest argues that it cannot cross-examine the potential employers who rejected Plaintiff and have no way to verify whether Plaintiff's recounting of their statements about why they could not hire him were true or not. Transwest argues that any probative value is minimal and such testimony runs the risk of unfair prejudice and misleading the

9

jury. On the minimal probative nature of the testimony, Transwest argues that the focus of this case is the end of Plaintiff's employment at Transwest and whether he could have maintained any role with the company—not why he could not get a job with other employers. Transwest also says it runs the risk of confusing the issues, misleading the jury, and unfairly prejudicing Transwest.

Plaintiff, for his part, argues that the present state of mind exception to the hearsay rule (Fed. R. Evid. 803(3)) would allow admission of Plaintiff's recollection of contemporaneous statements made to Plaintiff while he was applying for jobs and explaining his prior medical and injury history.

I agree with Plaintiff that the then-existing state of mind exception (including a statement of motive or intent) is an exception the hearsay rule that applies here. Plaintiff will be presumably testifying about what the potential employers told him when they rejected him for positions: words effectively communicating that "we can't hire you, your injury history makes you too much of a risk." This reflects the state of mind of the employer who considered Plaintiff to be too risky to hire, because of his medical condition. There is little basis for fabrication of such a statement. I also conclude that there is little danger of prejudice to Defendants or confusion of the jury. Plaintiff is entitled to explain what he did after he was fired and how he tried to minimize his loss of income by applying for other jobs. It would be more confusing for the jury to not hear about those efforts and whether they bore fruit or not. Learning that he was rejected, and the reasons given for the rejection is merely part of the story, and it does not place any unduly prejudicial information before the jury. Therefore Transwest's motion in limine (ECF No. 58) on this subject is **DENIED**.

## IV. Defendants' Motion in Limine Regarding Limitation on Plaintiff's Damages, ECF No. 59

Transwest moves to limit evidence related to Plaintiff's lost wages. Transwest asserts that based on Plaintiff's expert reports, Plaintiff will claim damages from the date of his termination through approximately 2029, his anticipated year of retirement. This encompasses 3.5 years of backpay, from July 3, 2020 through January 2024, and 5.2 years of front pay, from January 2024 through early 2029. However, based on multiple admissions from Mr. Smith, he is unable to work and receives SSDI because of his inability to work. Mr. Smith began receiving SSDI in September 2022, slightly over two years after his termination from Transwest. Thus, at most, according to Transwest, Mr. Smith can claim approximately two years of back pay, from July 13, 2020 through September 21, 2022. Based on this testimony, Transwest argues that the Court should restrict any evidence of lost wages after September 21, 2022. ECF No. 59 at 7.

I agree with Plaintiff that, on the issue of damages, Plaintiff should be afforded the opportunity at trial to explain how he would have been able to continue working had he been provided with a reasonable accommodation, which would have allowed him to continue to earn the wages at issue. And if those wages exceed the SSDI payments he is currently receiving, then he may be entitled to some monetary compensation, regardless of the fact that he receives SSDI.

I also note that the issues of awarding front pay or back pay are equitable remedies for the Court to decide. It may be appropriate to take evidence on this issue after the jury has deliberated and rendered a verdict on the ADA liability questions and non-economic damages (if any). The Court will address the procedure of taking

11

evidence on economic damages (whether before the jury or outside the jury's presence) on the first day of trial. But for now, this motion in limine (ECF No. 59) will be **DENIED**.

Date: September 26, 2024

_____
N. Reid Neureiter
United States Magistrate Judge